## DOWNING v. RADEMACHER et al.*

## L. A. No. 809; November 28, 1900.

### 62 Pac. 1055.

**Mines and Minerals—Quieting Title.—An Amended Complaint** in an action to quiet title to an interest in a certain mining claim was filed several months after the filing of the original complaint, and alleged that plaintiff then was, and at all times therein mentioned had been, the owner of such interest, there being no other time mentioned in the pleadings, and no demurrer thereto. There was a finding that defendant conveyed the interest by deed of a date prior to the filing of the original complaint, and that plaintiff practiced no fraud in obtaining such deed, which finding was not questioned on appeal. Held, that the finding sustained an averment of ownership prior to the time the complaints were filed.

**Mines and Minerals.—Action was Brought to Quiet Title to an Undivided** two-thirds interest in a certain mine, the claim being founded on a contract whereby plaintiff was to have such interest, and was to deliver one-third of the output to defendants. The decree adjudged plaintiff the owner in fee of a thirty-two sixtieths interest, and that defendants had no title thereto, and enjoined the latter from setting up any claim to such interest adverse to plaintiff, similar provisions being decreed as to the interests of defendants. Held, that the decree did not cut off defendants from claiming one-third of the minerals under the contract, since the interests as adjudged were undivided, the owners becoming tenants thereof in common.

**Mines and Mining—Cancellation of Deed.—Where an Undivided Interest** in a mining claim is conveyed in consideration of the grantee's agreement to work the mine and deliver one-third of the minerals to defendant, and do certain other acts in the future, their performance not being made a condition subsequent, a mere failure to perform on the part of the grantee does not constitute a failure of consideration, so as to warrant cancellation of the deed.

**Mines and Minerals.—Where an Action is Brought to Quiet Title to an Undivided** interest in a mining claim, such interest having been conveyed in consideration of a certain contract, whereby plaintiff was to work the mine as he saw fit, and deliver one-third of the output to defendant, plaintiff cannot be required to work the mine, as a condition on which his title will be quieted, since his contract is incapable of being specifically enforced.

APPEAL from Superior Court, Kern County; J. W. Mahon, Judge.

*For subsequent opinion in bank, see 133 Cal. 220, 85 Am. St. Rep. 160, 65 Pac. 385.

Suit by E. Downing against Aleck Rademacher and others to quiet title to certain land. From a judgment in favor of plaintiff, defendants Aleck Rademacher and T. M. Osmont appeal. Affirmed.

T. M. Osmont for appellants; Louttit & Middlecoff and J. W. Ahern for respondent.

CHIPMAN, C.—Action to quiet plaintiff's title to an undivided two-thirds interest in a certain mining claim, known as the "Baron Mine," in the Randsburg district. Judgment in the usual form was entered, quieting plaintiff's title to thirty-two sixtieths of the mine, also quieting the title of defendant Middlecoff, grantee of plaintiff, to eight-sixtieths, and the remaining twenty-sixtieths to defendants and appellants Rademacher and Osmont. The appeal is from the judgment, on the judgment-roll alone. There was a motion for a new trial, but there is no appeal from any order made on the motion, and hence the fragmentary statement found in the transcript cannot be considered. It appears from the findings that on January 11, 1897, Rademacher was the owner of the Baron mine, and on that day he conveyed two-thirds thereof to plaintiff. The finding of the court is as follows: "That the claim of title of the plaintiff herein to said mill and mining property is founded solely on said conveyance made by defendant Rademacher to the plaintiff on the eleventh day of January, 1897, and said contract, Exhibit B, made at the same time with said deed; . . . . that plaintiff claims that said conveyance was made to him in consideration of the covenants and undertaking on his part contained in said contract, Exhibit B." As the case depends somewhat upon the terms of this contract, at least a general statement of its provisions is necessary. It recites that, whereas Rademacher. has granted to Downing an undivided two-thirds interest in the Baron mine, "now, for the purposes of working said mine, said parties agree as follows." Downing was given the exclusive right to work the mine as he should see fit. "He shall mill and reduce all of the mineral ore taken out of said mine by him, and deliver to the said party of the second part [Rademacher] one-third of all the gold or other minerals taken from said ore by said first party [Downing] free of cost and expense to said party of the second part."

Downing was "to use his best endeavors to find water on said mining claim or near the same," and meanwhile was to take water from a well belonging to Rademacher. Downing was to have the right to erect any mills on the property or on other mining claims of Rademacher. Downing had the right to take any quantity of ore from the Baron mine that he might desire, and "have it milled wherever he pleases, provided always that he shall deliver to said Rademacher one-third of all of the gold and other products of said mining and milling." There was a provision that Downing would save Rademacher harmless from any demands of one Putnam and one Nidiver "for work they have done on said Baron mine, and will see that said Putnam and Nidiver are paid fair wages for the work they have done on said Baron mine; and all the ore now on said mine, milled by said Putnam and Nidiver for said Rademacher, is included in this contract, and said Downing may mill the same, and give one-third of the mineral taken therefrom to said Rademacher." There is a provision that Downing will defend at his own cost any lawsuits that may be commenced against Rademacher concerning the mine, and Downing may select the attorneys in any such suit, but shall not be liable for any judgment that may be rendered against Rademacher. The contract gave Downing the right to control certain litigation then pending in Kern county against Rademacher, and Rademacher released Downing and the plaintiffs in that action from all costs and damages caused to Rademacher by an injunction in said action. Middlecoff's interest comes from a deed by plaintiff to him after the deed to Downing was executed. It appears also that plaintiff conveyed thirty two-sixtieths to one Hyde, but that it was by way of and as a mortgage; and the court refused to order Hyde to be made a party defendant, for the reason that he had no interest in the property, except as mortgagee. The court found that neither said conveyance to Middlecoff nor said mortgage to Hyde "was made in violation of said contract, Exhibit B, nor without the knowledge or consent of said Rademacher, nor did said conveyance, or either of them, disable said plaintiff from performing said contract, Exhibit B, without the consent of his said vendees or otherwise." And there is a finding that both these conveyances "were made in good faith and for value," and that neither of them was without consideration. The court also

found that Downing "has endeavored, but is not now endeavoring, to sell and dispose of said mining property, but such endeavors were not without the consent of said defendants"; that he gave a written option to a third party to purchase said mine, but no sale was made, and it expired December 15, 1898; and that Downing sought defendants to join in said option, but they did not join.

1. Appellants contend that the complaint does not state a cause of action. The original complaint was filed April 28, 1898, and the amended complaint was filed September 20, 1898, and alleges "that plaintiff now is, and at all the times herein mentioned has been, the owner in fee," etc. No other time is mentioned in the pleading, except the date of the location of the mine by Rademacher, to wit, December 27, 1894, which it is claimed is not a "time" referred to in the averment, and hence there is no allegation of ownership at the date of the commencement of the action, and the complaint must fall. There is no demurrer. There is a finding that plaintiff became the owner of two-thirds of the mine on January 11, 1897; and this finding is based on a finding that Rademacher conveyed to plaintiff by deed of that date, on which date, also, they entered into an agreement reciting that fact. Rademacher's defense to this deed is that he executed it, if at all, through the artifice and fraud of Downing, on which issue the finding is against Rademacher, and is not now questioned. We must assume that the evidence supported the finding that Rademacher conveyed to Downing January 11, 1897, and this was before any complaint was filed. The findings support the averment of ownership at the time the complaint and the amended complaint were filed.

2. The decree adjudges that Downing was at the commencement of the action "the owner in fee and in the possession of an undivided thirty-two sixtieths interest," etc., and enjoins Rademacher, Osmont and Middlecoff, and each of them, "from setting up any claim to said undivided thirty-two sixtieths of said property, or any part thereof, adverse to plaintiff." Similar provision is decreed as to the respective interests of the other parties last above named. Appellants contend that the decree forever cuts them off "from claiming one-third or any proportion of the minerals extracted from said mine, in so far as the plaintiff's interest (thirty-two sixtieths) is concerned; and this because the decree, among

other things, adjudges that neither of appellants has 'any right, title, or interest whatever in said thirty-two sixtieths of said property owned by said Downing, or any part thereof.' '' The interests as adjudged to the several owners are undivided, and the owners became tenants thereof in common. The decree does not adjudge that plaintiff is entitled to any particular thirty-two sixtieths, together with the minerals therein contained, and no such construction can be given it. Each cotenant has an undivided interest in every portion of the mine, and the decree does not, in our opinion, adjudge or attempt to adjudge the rights of the parties to the minerals. Of course, the minerals go with the land, and each cotenant is entitled to his proportionate share of the minerals of every part of the mine.

3. Appellants further contend that the decree should either (1) have rescinded or annulled the deed and contract; or (2) there should have been ingrafted on the decree the obligation on plaintiff's part to carry out the contract known as "Exhibit B," which it is claimed was the consideration for the deed, or should charge plaintiff's title with a trust in favor of Rademacher and Osmont. This is what Rademacher and Osmont prayed for in their answer and cross-complaint. It is doubtful whether the findings can be construed as showing by a definite statement that the conveyance to plaintiff was in consideration of the contract executed by him. But, treating the contract as the consideration moving from Downing to Rademacher, does the case differ in principle from Lawrence v. Gayetty, 78 Cal. 126, 12 Am. St. Rep. 29, 20 Pac. 382? The question of fraud was eliminated in that case, as it is in this, and there remained, as was said by the court, as there remains here, "the plain, simple question whether a conveyance of real estate, fully executed on the part of the grantor, can be set aside for a failure of consideration, on the sole ground that the promises and agreements which induced its execution, and which by the terms of the contract under which the deed is made were not to be performed until after its execution, have not been performed." It was further said in that case, as it may be said in this: "It must be borne in mind that the plaintiff did not contract to convey upon the performance of the contract on the part of the defendants. Therefore his promise was not dependent upon theirs; nor was there anything appearing in the

deed, or in the contract under which it was made, showing or tending to show that a compliance with their promises was regarded as a condition subsequent, or that a failure to perform on their part should in any way affect the title conveyed to them.'' The contract now before us starts out with the whereas that Rademacher ''has this day granted to'' Downing ''an undivided two-thirds,'' etc. ''Now, for the purposes of working said mine, said parties agree as follows.'' There is no intimation that any failure on Downing's part shall forfeit the interest conveyed to him, or shall entitle Rademacher to a reconveyance of such interest. On the face of it, the contract simply gives to Downing the exclusive right to work the mine upon the terms stipulated, ''as he may see fit, and operate the same as he may see fit, . . . . and to take any quantity of ore therefrom which he desires, and have the same milled wherever he pleases, provided, always, that he shall deliver to said Rademacher one-third of all the gold and other products of said mining and milling.'' Doubtless Rademacher expected that Downing would go forward and operate the mine for their mutual benefit, and no doubt his expectations in this regard formed part of the consideration, and the chief consideration, in his mind, for making the deed. Nevertheless he exacted no promise, and none was made, that the deed should be inoperative if Downing failed to perform. In the matter of working the mine Rademacher trusted Downing, and he did not convey or contract to convey to Downing upon condition that Downing would perform. Neither did he impose any condition in the deed or in the contract tending to show that a compliance on Downing's part was regarded as a condition subsequent, or that Downing's failure to perform should affect the title conveyed to Downing. So far as we can see, Rademacher is in the same position, precisely, as Lawrence in his controversy with Gayetty, supra. In the present case Rademacher is asking the court to cancel the deed, or, if that cannot be done, then to require Downing to perform, as a condition upon which his title will be quieted. Clearly, we cannot cancel the deed, there being no fraud in procuring its execution. Appellants concede that the contract is utterly incapable of being specifically enforced, and, if that be so, how can we make specific enforcement a condition upon which Downing's title will be quieted? Can a court impose a condition which it is admitted the court cannot en-

force? We think not. Shorn of this question of fraud, the case presents at most a failure of consideration; and upon principle it is immaterial that the consideration took the shape of an agreement to work the mine and pay Rademacher a share of the proceeds, rather than an agreement to pay a given sum of money, for which Downing had given his promissory note. But, had the consideration been a promise to pay money, no one would contend that simply upon a failure by the vendee to pay the purchase money the vendor could have his deed canceled. Anticipating the conclusion above stated, appellants finally invoke the maxim that he who asks equity must do equity, and they claim that relief should be denied to plaintiff until he has first performed his contract. The court found "that a sufficient consideration did pass from said plaintiff to said Rademacher for said deed." Also, "that immediately after the execution of said contract, Exhibit B, and said deed, plaintiff took possession of said mine and proceeded to work and operate the same, but he has not extracted therefrom . . . . any more than a very small amount of valuable mineral-bearing ores; that he has disposed of a small amount of mineral ore taken from said mine, but has not appropriated the receipts to his own use; that he has paid the claims of said Nidiver and Putnam," and, as before stated, has paid Rademacher more money than was due him for any ores or mineral extracted from the mine. It is also found that plaintiff sold an undivided eight-sixtieths of the mine to Middlecoff, and mortgaged an undivided thirty-two sixtieths to Hyde, "but neither said conveyance . . . . nor said mortgage . . . . was made in violation of said contract, Exhibit B, nor without the knowledge or consent of said Rademacher, nor did said conveyance, or either of them, disable said plaintiff from performing said contract, Exhibit B, without the consent of said vendors or otherwise"; that each of said conveyances was made with full notice of the rights and title of defendant Rademacher, and was made in good faith and for value, and "that, since said contract was made, plaintiff has endeavored, but is not now endeavoring, to sell or dispose of said mining property, but such endeavors were not without the consent of said defendants"; that the option given to purchase the mine expired before the decree was entered in the case. It appears also from the findings that "Rademacher on March 2, 1898, commenced an

action in the superior court of the city and county of San Francisco against said Edward Downing to annul said conveyance, whereupon the plaintiff, Edward Downing, instituted the present action.'' Under this state of facts, we do not think Rademacher can defeat the action by resort to the maxim above referred to. Cases are cited by appellants where mortgagors have been denied equitable relief against an outstanding mortgage barred by limitation, without first doing equity by paying the mortgage. But this is not such a case. This action is the counterpart of Rademacher's action against Downing to cancel the latter's deed, which is the same kind of action as Lawrence v. Gayetty, supra, the only apparent difference being that Downing is the moving party here. The governing principle in the two cases is the same. We do not think that Rademacher has made such a case here as would justify us in denying plaintiff the relief sought. There is nothing to show that Downing has abandoned his contract, or is disabled from carrying it out, or has refused to do so. We advise that the judgment be affirmed.

We concur: Gray, C.; Haynes, C. .

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is affirmed.